# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**PPG INDUSTRIES, INC.,**
**Employer Below, Petitioner,**

**vs.)    No. 21-0232** (BOR Appeal No. 2055740)
                           (Claim No. 2019004730)

**DAVID O. WELLS,**
**Claimant Below, Respondent.**

# MEMORANDUM DECISION

Petitioner PPG Industries, Inc. ("PPG"), by Counsel James W. Heslep, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). David O. Wells, by Counsel R. Dean Hartley, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on December 5, 2018. The Workers' Compensation Office of Judges ("Office of Judges") reversed the decision in its September 18, 2020, Order and held the claim compensable for chronic myelomonocytic leukemia ("CMML"). The Order was affirmed by the Board of Review on February 19, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

1

(e) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning, and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r*, 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Wells, a chemical factory worker, alleges that he developed CMML as a result of occupational exposure to benzene while working for PPG. In a May 23, 2018, medical record, Amit Mehta, M.D., stated that Mr. Wells was seventy-two years old and was diagnosed with CMML. Mr. Wells reported exposure to benzene during his employment from 1966 to 2002. Mr. Wells worked as a pipefitter, welder, and foreman. During that time, he was exposed to benzene daily, both through his skin and through fumes. Mr. Wells had no family history of CMML. Dr. Mehta concluded that Mr. Wells developed CMML as a result of his significant occupational exposure to benzene.

The May 23, 2018, Employees' and Physicians' Report of Occupational Injury or Disease indicates Mr. Wells alleges that he developed CMML as a result of his employment at PPG. He stated that during his thirty-six year career, he was exposed to numerous chemicals, including benzene. The physician's section was completed by Dr. Mehta who diagnosed CMML as a result of occupational benzene exposure.

In a July 5, 2018, affidavit, Mr. Wells stated that during the thirty-six years he worked for PPG, he was regularly exposed to benzene. The chemical ran through pipes and as a pipefitter, Mr. Wells often came in contact with benzene. Mr. Wells was also exposed through fumes in the air that were blown into his work area from large vats of benzene. Mr. Wells stated that he was also exposed to benzene while working in the vehicle garage because they used Safety-Kleen, which contained benzene, to wash parts. Mr. Wells stated that three of his coworkers had been diagnosed with a form of leukemia after their employment at PPG. Mr. Wells stated that he was diagnosed with CMML in 2017.

Christopher Martin, M.D., performed an Independent Medical Evaluation on November 8, 2018, in which he noted that Mr. Wells reported frequent benzene exposure during the course of his employment at PPG, particularly when he was working as a pipefitter. Mr. Wells stated that he was exposed to benzene on a daily basis through his skin. Mr. Wells stated that he also used cleaners that contained benzene, such as Safety-Kleen. Dr. Martin opined that the evidence did not

support a finding that Mr. Wells' CMML was the result of his occupational exposure. Dr. Martin stated that the National Cancer Institute and American Cancer Society notes that most people are diagnosed with CMML between the ages of sixty-four and seventy-four. CMML is most common among males. Dr. Martin opined that Mr. Wells fits the typical profile for a diagnosis of CMML among the general population. He further opined that benzene is not listed as a risk factor for CMML, and therefore benzene exposure cannot be accepted as a risk factor for CMML. Dr. Martin acknowledged that the International Agency for Research on Cancer ("IARC") classified benzene as a Group 1 carcinogen; however, the classification was based on leukemia/acute non-lymphocytic leukemia, not CMML. Dr. Martin stated that he found only one study on causality between benzene exposure and CMML, and the study concluded that there was no causal connection. Dr. Martin noted that he recently assessed a coworker of Mr. Wells who developed a different kind of leukemia. He opined that this was evidence that the cancers were not the result of benzene exposure because the men developed different forms of leukemia. Dr. Martin concluded that Mr. Wells failed to show to a reasonable degree of medical certainty that his CMML was causally related to his occupational chemical exposure.

In a November 15, 2018, verified statement, Steven Petty explained that he is a Professional Engineer, a Certified Industrial Hygienist, and a registered Certified Safety Professional and was currently the president of a EES Group, Inc., a registered engineering corporation. Mr. Petty stated that he has a Master of Science in Chemical Engineering and almost forty years of experience in forensic engineering, environmental health and safety, and energy. He has testified as an expert witness in three hundred cases of chemical exposures and OSHA compliance. Mr. Petty stated that he reviewed materials about PPG's facilities as part of a deliberate intent case for another worker who worked at the same plant at the same time as Mr. Wells. Mr. Petty interviewed Mr. Wells by telephone on November 13, 2018. During that interview, Mr. Wells stated that he was diagnosed with CMML in 2017. He stated that he smoked cigarettes from 1967 to 2000. Mr. Petty asked Mr. Wells about his work history. Mr. Wells worked for PPG Industries in the utility department from September 1966 until March of 1967. Mr. Wells stated that during that time he was exposed to benzene. He wore gloves and carried an emergency respirator. Mr. Wells reported that he was a pipefitter for eight to ten years. During that time, he was exposed to benzene through the pipes. For twenty years, Mr. Wells was a welder. Mr. Wells stated that he could smell benzene while performing his duties at PPG. He was unaware that the chemical was dangerous. Mr. Wells stated that he used Safety-Kleen and liquid nail in the course of his employment, both of which contain benzene. Mr. Wells stated that he had never heard of a Material Safety Data Sheet ("MSDS") and had never received training on MSDS. Based on the information obtained from Mr. Wells, Mr. Petty opined that PPG violated many rules, regulations, and industry standards, creating an unsafe working environment which directly led to Mr. Wells' occupational illness and that Mr. Wells' chemical exposure would have been intense, frequent, and close to his body.

Arti Mehta, M.D., who completed the physicians' portion of Mr. Wells' claim application, stated in a November 26, 2018, certification statement that he has published over twenty articles in peer-reviewed medical journals in the areas of oncology and hematology. He opined that multiple studies have shown that higher levels of exposure to benzene result in a higher risk of developing CMML. Dr. Mehta stated that he is certified in oncology, hematology, and internal

medicine; he previously practiced at Duke Cancer Institute and currently practices at Premier Hematology & Tele-Oncology Center.

A December of 2018 IARC Monograph update on benzene was introduced into the record. The report states that benzene exposure occurs through inhalation or dermal absorption. Benzene is carcinogenic to bone marrow, causing AML and MDS diseases. It notes that benzene exposure is widely thought to cause leukemias similar to various forms of acute myeloid leukemia ("AML") and myelodysplastic syndromes ("MDS").

The claims administrator rejected the claim on December 5, 2018. It stated that records were sent to Dr. Martin who opined that there was insufficient evidence to establish a causal connection between Mr. Wells' medical condition and his employment.

The employer submitted a November of 1980 health hazard report by the National Institute for Occupational Safety and Health ("NIOSH") which indicates a request for evaluation was received from a local union for PPG. The hazard was benzene, para-dichlorobenzene, and polychlorinated biphenyls. Samples were taken and it was ultimately determined that there was no hazard from exposure to the chemicals.

A 1982 IARC Monograph on the Evaluation of the Carcinogenic Risk of Chemicals to Humans was also submitted and indicates that there is a clear correlation between exposure to benzene and the development of hematological conditions. The report stated that the relationship between benzene exposure and the development of acute myelogenous leukemia has been established by epidemiological studies. Causality between benzene exposure and other malignancies was not established but it was ultimately concluded that benzene is carcinogenic to humans.

Dr. Martin testified in a June 4, 2019, deposition that Mr. Wells was over-exposed to benzene in the course of his employment; however, the doctor opined that benzene exposure does not cause CMML. He stated that he researched and found only one study on the relationship between benzene exposure and CMML. That study found no causal link between benzene exposure and CMML. Dr. Martin acknowledged that there were issues with the study; he explained that CMML used to be classified with other MDS disorders but was eventually determined to be in a separate category. He opined that benzene causes acute myelogenous leukemia and MDS but that the evidence was insufficient to find that benzene also causes CMML. He stated that causality determinations in cases like this are judgment calls but admitted that he has only reviewed four to eight benzene blood cancer cases in his career.

A cytogenetics report from Quest Diagnostics dated July 14, 2019, indicated Mr. Wells had deletion of chromosome 13q and loss of the Y chromosome. The findings support a diagnosis of myeloid neoplasm, such as myelodysplasia or myeloproliferative neoplasm. It was noted that deletion of the 13q chromosome is seen in a wide range of lymphoid, myeloid, and non-hematological neoplasms.

4

Mr. Wells testified in a deposition on September 17, 2019, that he was diagnosed with CMML by multiple physicians, including Dr. Mehta. He stated that he began working for PPG in 1966 on the utility crew. While working in the tank fields, Mr. Wells could smell benzene. He worked on the utility crew until May of 1967 when he became an extra department relief man. He was unsure but thought he was exposed to benzene during that time through the soda-ash. He stated that on one occasion he had to be taken to the hospital by ambulance after exposure to HS2 gas. There were also several instances of him having to visit the nurse's station for oxygen after chlorine exposure. From August 1977 to November of 1982, he testified that he worked as a pipefitter, spending most of his time in the MCB unit where the benzene tanks were stored. He stated that he was regularly exposed to benzene while working on the pipes for the tanks. He and the other pipefitters regularly used the excess benzene to clean oil from their hands because they were unaware the substance was harmful. He also used benzene to clean his tools and clothing. Mr. Wells testified that he sometimes wore gloves while using benzene. In 1982, he switched to the welding crew but occasionally had to weld in the MCB unit including pipes. Mr. Wells testified that the pipes were soaked with benzene and when he welded, the benzene would smoke off of the pipe. In 2000, he suffered a heart attack and returned to work on light job duty supervising employees in the vehicle shop. In the shop, they used Safety-Kleen, which contains benzene, and brake cleaner. He stated that during his thirty-six years of employment, he was never trained on the hazards or proper use of benzene, nor was he told the chemical was harmful.

In an October 16, 2019, report, Richard Shadduck, M.D., a hematologist specializing in hematologic malignancies and a bone marrow transplant specialist, stated that he developed numerous research and training programs focusing on hematology and oncology. He has published more than 200 articles in the field of hematology and bone marrow transplant programs. Dr. Shadduck reviewed Mr. Wells' records and concluded that his occupational benzene exposure was significant for his development of CMML. He agreed with Dr. Mehta's finding that Mr. Wells' benzene exposure more than likely caused his CMML. The doctor explained that CMML used to be classified as an MDS disorder but was reclassified in 2001 with myelodysplastic and myeloproliferative diseases. He interviewed Mr. Wells regarding his exposure history and determined that Mr. Wells' CMML was of a MDS variant. He found that there is substantial evidence showing that MDS is linked to benzene exposure, but because CMML was reclassified, there were very few studies on the link between CMML and benzene exposure. He opined that to a reasonable degree of medical certainty, the data supports the conclusion that benzene exposure leads to AML, MDS, and CMML and that Mr. Wells' CMML was the result of his work-related benzene exposure. Regarding Dr. Martin's report, Dr. Shadduck stated that Dr. Martin is neither a hematologist nor an oncologist. Further, he noted that Dr. Martin found a single study on CMML and benzene and failed to consider that CMML was included in MDS for twenty years.

Dr. Mehta testified in a deposition on December 4, 2019, that he is a hematologist and oncologist and is board certified in both specialties. He found that Mr. Wells' benzene exposure was significant, frequent, and intense and opined that the exposure likely caused him to develop CMML. He noted no other risk factors for the development of a bone marrow condition such as family history or radiation. He stated that the World Health Organization divides CMML into two categories, myeloproliferative ("MDP") and MDS. Mr. Wells' CMML is of the MDS variant, based on his white blood cell count and other markers. He opined that a review of literature related

to Mr. Wells' condition should also include literature pertaining to MDS. He further opined that the literature is conclusive that benzene exposure causes MDS and that it is reasonably probably to conclude that Mr. Wells' benzene exposure resulted in his development of CMML.

In a March 17, 2020, report, Martyn Smith, Ph.D., stated that he is a professor of toxicology and holds the Kenneth and Marjorie Kaiser Chair of Cancer Epidemiology in the School of Public Health at the University of California at Berkeley. Dr. Smith served as the United States representative at the Scientific Council of IARC from 2010 to 2014. He also served as an expert on the IARC committee that evaluated the carcinogenicity of various chemicals, including benzene, for the IARC monographs. Dr. Smith authored over 305 articles in peer reviewed journals in toxicology, over 100 of which were related to benzene exposure. Dr. Smith stated that there is no dispute that benzene exposure causes MDS and AML. Dr. Smith noted that because CMML was classified as an MDS for so long, the majority of the research does not focus specifically on CMML. However, Dr. Smith stated that CMML is essentially no different from other MDS disorders in that it causes genetic damage to hematopoietic stem cells. Dr. Smith concluded that benzene exposure can cause CMML in the same way that it causes MDS or AML. After reviewing Mr. Wells' exposure history, Dr. Smith concluded that to a reasonable degree of certainty, Mr. Wells' benzene exposure was sufficient to have caused his CMML. Dr. Smith opined that Mr. Wells' smoking history made him more susceptible and contributed to his development of CMML but reiterated that the major contributor to Mr. Wells' CMML was his occupational benzene exposure.

The Office of Judges reversed the claims administrator's rejection of the claim and held the claim compensable for CMML in its September 18, 2020, Order. First, the Office of Judges found that there is no question that Mr. Wells suffers from CMML. Second, the Office of Judges concluded that Mr. Wells had significant occupational exposure to benzene. He reported that he was exposed to benzene and benzene containing products for his thirty-six years of employment at PPG. Benzene was stored in the area Mr. Wells spent the majority of his career and was in the pipes he worked on. Mr. Wells was taught by other pipefitters to use excess benzene to clean his hands, tools, and clothes. When Mr. Wells welded pipes from the MCB unit, the benzene in and on the pipes would smoke, releasing fumes. Mr. Petty, a certified industrial hygienist, characterized Mr. Wells' benzene exposure as intense, frequent, and proximate. Drs. Shadduck and Mehta also found Mr. Wells' exposure to be significant. Even Dr. Martin noted that Mr. Wells was over-exposed to benzene at work. The employer relied on the July 11, 1980, NIOSH sampling to assert that no benzene hazard was found at the plant. However, the Office of Judges concluded that such report only establishes that benzene was not present in hazardous amounts on that particular day and time. The Office of Judges concluded that the report was not sufficient to rebut the other reports of record indicating Mr. Wells was exposed to benzene.

Third, the Office of Judges determined that the weight of the medical evidence establishes that benzene exposure can cause CMML. The Office of Judges noted that Dr. Mehta opined that it was probable that Mr. Wells' benzene exposure caused him to develop CMML; Dr. Shadduck opined to a reasonable degree of medical certainty that the available medical literature supports a finding that long term exposure to benzene leads to the development of CMML; and Dr. Smith opined to a reasonable degree of medical certainty that occupational exposure to benzene causes

myeloid neoplasms, including CMML. Conversely, the employer argued that benzene exposure does not cause CMML and relied on the report of Dr. Martin. The Office of Judges noted that Dr. Martin is an occupational medicine physician who opined that the evidence does not support a finding that benzene exposure caused Mr. Wells to develop CMML. The Office of Judges found that MDS encompasses a diverse group of bone marrow disorders and that for many years, CMML was classified as MDS. However, in 2001, CMML was reclassified as an MPD/MDS, and therefore, there are very few studies focusing solely on CMML. The Office of Judges found that Dr. Martin relied on a single study from China which concluded that benzene exposure did not cause CMML even though the doctor acknowledged that the study was flawed. The Office of Judges noted that Drs. Mehta, Shadduck, and Smith all opined that any inquiry into a causal connection between benzene exposure and CMML should include a review of literature pertaining to benzene and MDS as well. The Office of Judges concluded that Drs. Mehta, Shadduck, and Smith were correct. The Office of Judges further determined that the physicians stated that there is no dispute that benzene exposure causes MDS and that CMML was classified as MDS for several years. Dr. Smith opined that CMML is essentially no different than other MDS diseases and opined that it is medically reasonable to conclude that benzene exposure causes CMML. The Office of Judges concluded that issues of medical causation in cases such as this one come down to a professional judgment call, as noted by Dr. Martin. The Office of Judges found that Drs. Mehta and Shadduck, (hematologists specializing in leukemia), and Dr. Smith (a toxicologist specializing in benzene) are all experts in fields relevant to the issue at hand with years of experience and that all three physicians agree that benzene exposure can cause CMML. On the other hand, Dr. Martin is an occupational medicine physician who admitted that he has only seen four to eight benzene blood cancer cases in his entire career. The Office of Judges found that the opinions of Drs. Mehta, Shadduck, and Smith were more reliable than that of Dr. Martin and concluded that Mr. Wells met his burden of proof showing that benzene exposure can cause CMML.

Finally, the Office of Judges concluded that Mr. Wells' significant and extensive benzene exposure resulted in his development of CMML, as found by Drs. Mehta, Shadduck, and Smith. The Office of Judges noted that West Virginia Code § 23-4-1 provides the standard for compensability of occupational diseases as follows:

> (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee; and (6) that it appears to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

*Id.*

The Office of Judges concluded that Mr. Wells established a prima facia case for CMML due to occupational benzene exposure by showing: (1) a causal connection exists between the conditions under which his work was performed and his diagnosis of CMML; (2) his CMML was a natural incident of his work as a result of exposure to benzene; (3) the cause of his CMML can be traced to his employment; (4) his CMML did not develop as the result of a non-occupational hazard; (5) the exposure which resulted in CMML was incidental to the character of the employer's business; and (6) his development of CMML originated in a risk connected to his employment and flowed as a result of that employment. The Office of Judges held the claim compensable for CMML. *See id.* The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 19, 2021.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Wells submitted sufficient evidence to find his claim compensable under West Virginia Code § 23-4-1. Mr. Wells met his burden of proof by showing that he had significant exposure to benzene throughout his thirty-five years of employment for PPG and that such exposure resulted in the development of CMML.

Affirmed.

**ISSUED: February 10, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn